MARY REESIDE, ADMINISTRATRIX OF JAMES REESIDE,

*vs.*

ROBERT J. WALKER, SECRETARY OF THE TREASURY OF THE UNITED STATES.

AT LAW. DECIDED NOVEMBER 21, 1848.

*For a Writ of Mandamus commanding the defendant to enter or cause to be entered upon the books of the Treasury Department of the United States, a credit, and to pay to the plaintiff the amount of said credit.*

1. No money can be constitutionally drawn from the Treasury of the United States without an appropriation made by law.

2. The Court has no jurisdiction to command the Secretary of the Treasury to enter a credit on the books of his Department without a special law directing him to do so.

3. The Court cannot by *mandamus* command an officer to do an executive act, in the performance of which he has a right to exercise judgment and discretion.

RICHARD S. COXE for the petitioner.

RANSOM H. GILLETT, Solicitor of the Treasury, for the Secretary.

## STATEMENT OF CASE.

This was a petition of Mary Reeside, executrix of James Reeside, for a writ of *mandamus* commanding the Secretary of the Treasury of the United States, first, to cause to be entered upon the books of the Treasury Department, under date of May 12th, 1842, a credit to the said James Reeside (since deceased) of the sum of $188,496.06; and, secondly, to pay to the petitioner, as executrix of the said James Reeside, the said sum, with interest from the 12th of May, 1842. The petitioner states that the said James Reeside died on the 3d of September, 1842, at Philadelphia; that in his lifetime he claimed certain credits upon contracts with the Post Office Department, which the Postmaster General refused to allow; that the United States brought suit against him in the Circuit Court of the United States for the Eastern District of Pennsylvania for a supposed balance of $32,709.62; that the defendant pleaded *non assumpsit* and a *set-off*, upon

which issue was joined and such proceedings were had that the jury found the issue for the defendant, and certified that the United States were indebted to the said James Reeside in the sum of $188,496.06; that the United States obtained a rule upon him to show cause why a new trial should not be granted, which rule was disallowed and overruled on the 12th of May, 1842, and upon the same day, " upon the consideration of the said Court, judgment was rendered upon the verdict aforesaid in favor of the said Reeside," which judgment remains in full force and is in no part satisfied, annulled or reversed, whereby he became entitled to have the sum of $188,496.06 carried to the credit of the said James Reeside, under date of 12th of May, 1842, as the balance then due to him from the United States; that on the 29th of March, 1848, the petitioner exhibited to Robert J. Walker, the Secretary of the Treasury, her letters of administration and an exemplified copy of the record and proceedings aforesaid in the Circuit Court, and requested the said Secretary to cause to be entered upon the books of the Treasury Department, under date of May 12th, 1842, a credit to the said James Reeside in the sum of $188,496.06, and also requested the said Secretary to pay her the same sum, with interest from that date, which he refused to do, " so that the only means of obtaining the money is by application to this Court;" that in answer to the said demand the Secretary said that " her request could not be complied with," whereas she avers that the " claim aforesaid has been judicially ascertained and cannot be inquired into, and that the Secretary, by *virtue of the general laws of the United States, is authorized and required to pay the said sum.*    Wherefore she prays for the writ of *mandamus,* commanding," &c.

RICHARD S. COXE, for the petitioner:

The case is new; but I hope to show that the principle is not new, and that this Court has the power derived from the statutes as well as the common law, to grant the *mandamus* prayed for.    Principles of the highest moment to the citizens and Government of the United States, are involved

in this case. A citizen entered into a contract with an officer of the United States, whose power to bind the Government is well known; by which he agreed to perform certain services for a certain sum of money. A disagreement arose between the parties in relation to their accounts, and, by mutual consent, a suit was instituted by the United States, in order that the affair might be judicially investigated. The Court was occupied two days in delivering their charge to the jury, and the latter, after being out a whole week, rendered a verdict in favor of the defendant for $188,496.06. An application was made by the United States attorney for leave to discontinue, but the motion was refused by the Court. After the verdict a motion was made on the part of the plaintiff for a new trial, and that motion was denied. An appeal was taken to the United States Supreme Court, but it was subsequently abandoned. The matter has twice been brought by the petitioner before Congress, but no action has been had upon it by that body. The Secretary has refused to act, and our hope is now in the judiciary.

By this verdict and judgment it is now settled that there is a large amount due to Reeside, and the only question now is, whether the judiciary has power to coerce the payment. The 3d Article of the Constitution confers upon the Supreme and such other Courts as shall be established by Congress, the entire judicial power of the United States. The 2d section of that Article which indicates the extent of the power, declares that it shall extend to all cases arising under the laws of the United States or in which the United States is a party. In 1795, the Supreme Court held, in the case of Chissell vs. The State of Georgia, 2 Dallas, 478, that, under, the Constitution, as it then existed, States were suable. This led to an amendment of the Constitution by which States were exempt from suit. In 1801, an act was passed re-organizing the Courts. Sec. 3, Stats. at Large, 92. By that act jurisdiction was given to the Circuit Courts over all cases in law and equity, in which the United States

should be *plaintiff.* . The Act of February 27, 1801, 2 Stats., 103, makes the same distinction; thus restricting the power given by the Constitution to the judiciary. Can it be doubted that the United States *may* authorize suits to be brought against it? The power has frequently been exercised by Congress. Citizens of Arkansas, Louisiana and other States have been expressly authorized to institute against the United States. One such suit has been known in this Court —that of Van Ness *et al. vs.* The United States.[1]

The question is this: Has Congress invested the Circuit Court of Pennsylvania with the power to decide in relation to the rights of the parties, and this Court with the power to enforce their judgment? The Act of March 3, 1797, 1 Stat. at Large, 512, passed shortly after the decision in the case of Chisholm *vs.* State of Georgia,[2] was an act avowedly to provide for the settlement of accounts. The fourth section of that act provides that in suits between the United States and individuals no claim for credit shall be admitted on trial but such as shall appear to have been presented to the accounting officers of the Treasury, and by them disallowed in whole or in part. Jurisdiction over the credits rejected by the Treasury officers is conferred upon the Court. It is an appellate jurisdiction from the dicision of those officers. This Court has a right to say that a voucher is correct, and that a party is entitled to credit therefor; and if such voucher is found good by the Court and jury they can not say they will not allow the same as an offset and not otherwise. The power of the Court as an appellate power is co-extensive with that of the officers of the Treasury. With the aid of a jury they have full power in every case where a claim has been *rejected* by the accounting officers of the Treasury. In case ten suits should be brought by the Government for a thousand dollars each, a single voucher for five thousand would kill the whole *seriatim.* The case has been decided more than once. The suits could not all be lumped together, and the five thousand

---

[1] 2, Cranch, C. C., 376.   [2] 2 Dall., 419.

apply as an offset merely to so many as it should cover.
The defendant is entitled to every credit for all his claims.
The terms of the Act of 1797 are broad and comprehensive.
See also the United States vs. Wilkins, 7 Wheat., 143. In
the case of Walton vs. The United States, 9th Wh., 651, the
opinion was delivered by Judge Duvall, who had for many
years, served as First Comptroller of the Treasury, and is
clear and strong in favor of the doctrine. If the Court has
the power of deciding whether the auditor has properly re-
jected a claim, it may go further. In the case of the Bank
of the Metropolis vs. The United States, 15 Peters, 377, the
Court received proof far beyond the claim of the United
States, but decided that it had not power to award a judg-
ment against the Government. Circuit Courts have, in
several instances, given judgment against the United States.
The case of the United States vs. Fitzgerald was an eject-
ment suit brought in the Circuit Court of the United States
for the Eastern District of Louisiana, brought by the Gov-
ernment to recover possession of land claimed by pre-emp-
tion right by the occupant. The Court held, that an equit-
able right was good against a *legal* claim of the United
States, and enjoined the Government against all further
proceedings to disturb the occupant in his possession. On
appeal, the Supreme Court said, 15 Peters, 407, that the
judgment of the Court in Louisiana, being in the usual
form in that State, " we think it ought not to be disturbed."

The debt in this case has now been judicially proved.
It is now a judgment. The decision of the accounting offi-
cers has been overruled. We are entitled to the credit.
Since July, 1847, there has been a large general appropria-
tion, out of which the debt might and ought to be paid.
But at any rate, we are entitled to credit upon the books.

Congress has no power under the Constitution to exam-
ine claims. It is exclusively vested in the judiciary. If
the courts of the United States have not power to compel
the Government to pay, ours is the only country in the

world where that power does not exist in the judicial tribunals.

At Common Law, no judgment can be given for the defendant, but under the law of Pennsylvania the defendant, by becoming a party to the record, has a right to a judgment.

Ransom H. Gillet, Solicitor of the Treasury, denied the jurisdiction of the Court, and declined to appear.

CRANCH, C. J. :

As to so much of this petition as asks for a *mandamus* commanding the Secretary to pay the money, it is sufficient to say that there has been no specific appropriation of money to pay it, and no money can constitutionally be drawn from the Treasury of the United States without such an appropriation.

And to so much of the petition as asks for a *mandamus* commanding the Secretary to cause a credit to the said James Reeside, to be entered upon the books of the Treasury Department, for the sum of $188,496.06, this Court has no jurisdiction or authority to issue such a writ to the Secretary of the Treasury, because there is no special law directing him to enter such a credit on the books of the Treasury as there was in Kendall's case; and because it would command him to do an official executive act, in the performance of which he had a right to exercise judgment and discretion, and in which this Court has no jurisdiction to guide and control him.

The cases of Marbury *vs.* Madison, Kendall *vs.* U. S., Decatur *vs.* Paulding and Brashear *vs.* Mason, which were largely cited in McElrath *vs.* McIntosh at the present term, are considered by this Court as decisive of the present case. The Court therefore refuses to issue the *mandamus* as prayed.*

---

*On writ of error to the Supreme Court of the United States, 11 How., 272, the judgment of the Circuit Court was affirmed.